Right in the middle, right in the middle. May it please the court. I'm Rob Meyers and I'm appearing on behalf of Mr. Travis Raymond. Mr. Travis Raymond was sentenced to 180 months on two counts concurrently, an ACA-enhanced firearm count and a drug count. In the habeas proceeding below, everyone agreed that his ACA sentence was unlawful. But the district court denied his habeas petition based on the could-have-imposed test. And what I mean by that is the district court said, all right, your ACA sentence is improper and you shouldn't be 180 on that count. You should be a max of 120. That's an illegal sentence. It's an unconstitutional sentence. But I could have imposed a sentence of 180 months on the drug count. And because that sentence is lawful, it's something I could have imposed, you're not entitled to habeas relief. That test is legally incorrect. Well, now, wait a minute. Eason just upheld that. How do you distinguish Eason? I distinguish Eason on several bases. There, the district court explicitly invoked the concurrent sentencing doctrine, which is a discretionary doctrine that was not invoked by the district court in this case. That didn't happen in Jefferson, a prior case. So that's one reason why I think that. Judge Davis' cases. OK. I think another reason why Eason is distinguishable is that in Eason, ACA had no effect on the guideline range. The guideline range was driven by the career offender. If my memory serves, the range was 262 to 327. And the Court of Appeals noted that not only did the ACA firearm count not drive the guideline range, rather it was driven by the career offender range, I believe on a drug count, but that there was no indication in the record that ACA drove the sentence. Instead, the indications were that the career offender count drove the sentence. In fact, his sentence was above the 180-month mandatory minimum. That is completely distinguishable from the record in this case. The sentence is 180 months. That's the lowest the district court could go. At least three separate times in the sentencing transcript, the district court said, hey, I can't go lower. I mean, your guideline range is 188 to 235, and the most we're talking about is eight months off here. And so it's clear from the record the district court didn't think he could sentence less based on ACA. Mr. Raymond's attorney never even asked for a lower sentence because he understood that he couldn't get a lower sentence, and Mr. Raymond himself understood that. As I read the district court's opinion, it sounded like the district court felt, I think, maybe used the word bound by Sun Bear? Correct. The could have imposed test, it got from Olton, an unpublished case, and Sun Bear. So it did a mechanistic analysis. It said, could I have given you a sentence of 180 months on the drug count? If the answer to that question is yes, then your sentence, you're not eligible for habeas relief. And Sun Bear was guidelines, right? Correct, Sun Bear. This is ACCA. And what about Craven's? Does that change how we look at the applicability of Sun Bear and Olton? I think Craven's just confirms it. I think that Sun Bear on its own terms is distinguishable from this case because what Sun Bear stands for is the proposition that mere guidelines errors are not cognizable on habeas review. Sun Bear explicitly has a carve out for constitutional sentencing errors, for jurisdictional sentencing errors, and that's what we have here. So it's- We don't have that here. Yes, we do. With respect to the other count. That's the problem. Right, but in Sun Bear- That's your- I mean, the problem is this was- Sun Bear and Eason left this to the district court's discretion. And your argument was the could have imposed standard is wrong as a matter of law. That's correct. And I think that's- I don't see that from those cases. Respectfully, I disagree with your reading of those cases. I think that in Sun Bear, it was clear that it was a mere guidelines error. And so the court said mere guidelines errors are not cognizable on habeas review. If there is an error of constitutional dimension or of jurisdictional dimension, that's a different matter. And here below, everyone agreed that the ACCA sentence was unconstitutional, was unlawful, exceeded the statutory maximum, and therefore the district court was without jurisdiction to impose it. And that's exactly what Craven's- But that you have to go from there to that the sentencing package doctrine is mandatory. No, not at all. I don't dispute for a minute that the sentencing package doctrine is discretionary. The error in this case was the district court concluding. In fact, let me get the exact language corrected on here. On page 10 of the district court's order denying our 60B motion, it said, pursuant to controlling precedent in this circuit, if the same sentence could have been imposed, then a defendant is not entitled to habeas relief. That's not the test, right? I agree that the sentencing package doctrine is discretionary, and it's not mandatory that the district court impose it. But the test isn't could I- If that was the test, no one could ever get relief in this situation, and the sentencing package doctrine would never apply. And we obviously know that's not the case because Craven's came out the exact opposite way. So the test is rather whether not granting relief based on vacating one count in this case. You want this remanded for a procedural do-over. We're asking that it be vacated and remanded, correct? And then Judge Davis. With an instruction that the district court would have discretion. Sure. Right. To apply the sentencing package doctrine. Right. Is there any reason to believe Judge Davis wasn't aware that he could apply the sentencing package doctrine? I mean, I was a district judge for a long time. It's hard for me to imagine anybody sitting on the federal district bench not aware of that situation. I mean, it seems like one of these reversals that's a matter of mere semantics. You know, you send it right back and you'd say, okay, Judge Davis, tell us what you really think. And he's going to say, yeah, I really think 180 months is the right answer. Go away. Goodbye. See ya. He never said that in two different orders. That would have been so easy to say. It would have been so easy to write. He did the analysis in Jefferson, which was a 600 month sentence. That he's done something different in another case enhances my argument. He demonstrates he knows the legal parameters of his discretion. I think simply because you get something right once doesn't mean you can never get it wrong. I mean, that's not true. Courts can get something right one time and then mess up in another context. So my basis for concluding that he didn't know about the sentencing package doctrine is he never said a peep about it. He adopted a legal test that is completely contrary to it. He said, if I could have imposed the same sentence, you are not entitled to habeas relief as a matter of law. That's wrong. That ignores Craven's. That ignores the sentencing package doctrine. That is not the correct legal test. Moreover, the record strongly suggests, strongly suggests, that he, in fact, would have chosen a different sentence. Because the sentence is at 180, three separate times in the record. He said, hey, I can't do anything different than 180. His statement of reasons on either the last page. When you read that record, doesn't that look like a judge just trying to cut off the argument, just leave me alone, I can't do anything less? Much more than, I'm really contemplating this. I mean, you read what district judges say. District judges frequently say, were it within my power, I would sentence substantially less than the mandatory minimum in this case. But they oftentimes tell people, don't bother arguing with something below the mandatory minimum, because I can't consider it. Different analysis, right? But that's so distinguishable from, take Olten. There, the district court, on the sentencing transcript, said, hey, these are extreme facts. And a sentence at the top of the guideline range is warranted. Here, Judge Davis went below the guideline range. So I actually think the record is strongly in my favor on the point of whether he would receive a lower sentence. Can I say with certainty? No. But that's not the test. Craven said the test is whether it's harmless. And that boils down to whether we can say with fair assurance that the court would not have imposed the same sentence had it vacated the improper count and looked at it anew. There's, you certainly can't say with fair assurance here. I mean, what's the record support for that? It'd be entirely different if he sentenced him to even 181 months, because that would show that the ACCA wasn't setting the floor. I mean, even his written statement of reasons, beyond the form, says the sentence I'm imposing is due to the mandatory minimum. Well, the drug sentence has no mandatory minimum. I mean, the guidelines clearly provide that you treat everything together. That's what the PSR recommended. They're grouped. The commentary to section D says, when they're grouped, you treat them as constituting a single offense. The court did exactly what the guidelines provide. In fact, in the judgment and commitment, the court didn't even separate out that the supervised release was concurrent on counts one and two. If you go look, it just says five years supervised release. And in the sentencing transcript, it's the same thing. That, again, underscores that Judge Davis was thinking about this as a total thing, and that the ACCA was the bar to considering a lower sentence. This case, I think, is better than Beckham, right? Beckham, the person got a win within a 188-month sentence. So yeah, have I answered your question? Yes. Do you want to address the 28-J, the recent battle on the? Which one? Quarles or Eason? I'm sorry? The government filed two 28-Js. Quarles or Eason? Well, I have the Quarles one. Was there another one more recent than that? No, no, no. They filed a 28-J about Eason a few months ago. No, I apologize. No, the most recent one that we just got, I will say, I haven't had a chance to study it as much as I would like to. But if you want to have an opportunity to state your position on it. I would love an opportunity. Thank you, Judge. So our position is twofold. First, we think that the government has waived this argument for several reasons. Quarles is an interesting case because it was a cert petition filed by a defendant who lost the burglary argument in the Sixth Circuit. The government, in March of 2018, filed a response to the cert petition urging the Supreme Court to grant cert in this case and issue a holding that is essentially what the Supreme Court issued. So the government knew, as of March 2018, that it wanted the Supreme Court to take this case. It thought that the rules in circuits like the Eighth Circuit with MacArthur were wrong. And it was urging the Supreme Court to adopt a contrary position, which is exactly what the Supreme Court did in this case. So the government has known about this argument for a long time. I mean, I fought tooth and nail with the government about MacArthur. That was my case. They made those same type of arguments. The government never asserted any of that at any stage in the briefing until Quarles came down, I believe, on Monday. Wait a minute. They couldn't argue it to our panel. They can still assert the argument and say that we realize it's foreclosed by MacArthur. But they can still say it's wrongly decided, especially when the Solicitor General is pursuing. When the Supreme Court overrules what would have otherwise been a binding decision on our panel, the government doesn't have to say we're arguing it to the panel only to preserve it for in-bank review. They can do that without quote, preserving it with the panel. So the Supreme Court opens it up at the panel level. OK, well, I think it's forfeiture waiver, but that's only part of my answer. So even if you disagree with that, the second part of my answer is what I asserted in my 28-J based on Van Cannon. The two ways of committing Minnesota burglary are enters or remains unlawfully with intent to commit a crime, or enters and remains unlawfully and commits a crime. It just says enters unlawfully and commits a crime, but then the definition of enters includes unlawfully remaining if you look behind some of the statutes. That has no intent at all. And this court has already held that those alternatives are factual means, not alternative elements. And that conclusion is not undermined by quarrels at all. In fact, it's correct based on some unanimity cases of the Minnesota courts, which was the basis for the Eighth Circuit issuing part of its decision in MacArthur. And the Seventh Circuit in Van Cannon recognized that because there is a way of committing Minnesota burglary, an explicit textual way that does not require intent, it is categorically broader than the generic definition in Taylor, which is entering or unlawfully remaining in a building or structure with intent to commit a crime. Does it matter if I'm, again, it's a cursory reading, but my understanding is Van Cannon dealt with second degree burglary, which for some reason has a slightly different wording than third degree burglary. And your client has a third degree burglary conviction, correct? So it's the difference between without consent and steals or commits a felony or gross misdemeanor. That's third degree. And second degree that Van Cannon was dealing with was just commits a crime. Sure, but it's the same logical structure, right? A felony or gross misdemeanor or those things in that list you just read in third degree are crimes. So and there are crimes in Minnesota that don't require intent, like third degree homicide, which I believe is 609.1095. Alternative B of that specifically says whoever without intent to cause death proximately causes death to someone by giving them drugs has committed third degree homicide. And that's a felony. And that's a felony, yeah, clearly. And there are many crimes. Well, maybe I shouldn't say many. There are other crimes in Minnesota that don't require intent. And what's the Supreme Court of Minnesota case where that kind of crime was sufficient to establish this burglary offense? Well, it explicitly would be based on the text. So let me give you a little. I see that my time. Well, you know, it has to be a realistic probability. So you've got to go to the case law. So I think I have a realistic probability. I see that my time's about to expire. May I answer? Sure. OK. So here's my realistic probability. Let's say I'm a drug addict. And I have another friend who's a drug addict. And we're strung out. We need to get some sleep. So we break into a building to get some shelter. That's all we want to do. We sleep. We wake up. My buddy says, I'd really like some drugs right now. I have the drugs. I give my buddy the drugs. He dies. And it's clear that he died because of the drugs. I've committed third degree homicide. And because I was entering and remaining unlawfully in a building and committed a crime, I will also have committed a burglary. And it is not far-fetched at all to think that people that are on drugs seek out buildings, particularly buildings that are either abandoned or quasi-abandoned. Somebody owns them. There's signs saying, you can't come in. Don't trespass. But they go into the building because they want shelter. And the reason why there's a third degree homicide that says approximately causing death through drugs is because that happens. So that is, in my mind, a very realistic probability for the basis of a burglary conviction in Minnesota where the statute explicitly disclaims intent. Well, in the third degree, there's numerous crimes that require no intent that could be committed as well, right? Yeah, I mean, if you just look at, depending on the nature of the place that's been burglarized, there's the indecency laws. There's just a ton of them. There's a ton of them. I was just attempting to provide one factual illustration that I think is a realistic probability. I see that my, oh, and I would also note that that is textually proper under the, like, I'm not, you know, that hews close to the text of both the burglary statute and the third degree homicide statute. Thank you. Thank you. Ms. Kirkpatrick. May it please the court, my name is Lisa Kirkpatrick. And I am an assistant US attorney here in St. Paul. I represent the United States in this appeal. It wasn't my intent, but I'm going to start where we ended just now with regard to quarrels. First of all, the Michigan statute at issue in quarrels is just like the Minnesota statute. It also didn't specifically require that a defendant or burglar remain in with intent to commit a crime. Instead, a person commits burglary in Michigan if they unlawfully remain in and commit a crime. The Supreme Court dropped a footnote in quarrels indicating that quarrels had, in fact, made the same argument about the lack of any intent. The Supreme Court said that issue wasn't preserved. But the Supreme Court isn't in the business of issuing advisory opinions. This was a 9-0 opinion.  it could have taken a number of actions, including dismissing the case as improvidently granted, requesting further briefing. It didn't. It simply said it wasn't deciding the issue. But to the extent that this court has any concerns about the intent component of Minnesota burglary, this is a divisible statute. As with regard to the underlying crime, the state has to prove what the underlying crime committed was. If that crime has intent, then there is no argument that the burglary offense lacks intent. And here, the PSR shows the defendant stole some bikes and some other stuff from a garage. There's no question that the defendant in this case committed a volitional act. Of course, the United States would welcome the opportunity to brief us, if your honors would find that useful. But the government's main position here is that this appeal should be dismissed for lack of jurisdiction. So your position would, regarding the intent on the crime or the felony or misdemeanor that's committed in the structure, so your position is that's an element. And so you could then, a federal district court could look to determine whether or not this particular burglary conviction qualified or did not? Correct. The underlying crime committed is an element of the burglary offense. So in your position, some burglaries under Minnesota law would continue to qualify, and some would not under the intent argument. Your honor, yes and no. Primarily, our position is that all burglaries count, because it's a continuing offense. But to the extent there is any concern about this intent element, it is a divisible statute, because the underlying crime committed is an element of the offense. And so if this court were to find that non-volitional crimes didn't satisfy the generic definition, that's not an issue here, because the defendant committed the act of theft. He stole things. That's a volitional act. That's not third degree murder resulting from a drug overdose. Turning to the jurisdiction issue, both in front of the district court and as well continuing here on appeal, the defendant's Rule 60B motion to reconsider is nothing more than a Trojan horse to attack the underlying order denying his Section 2255 motion. We know that, because the defendant told us that. He told us that he's actually appealing the denial of his 2255 motion. For instance, at page 10 of his brief, he says that the appeal is in accordance with the certificate of appealability that permitted him to appeal the denial of the 2255 order. That's all he talked about here today. That's all he talked about in his opening brief. That certificate of appealability was legal nullity, because it was issued months after the appeal period ended in this case. The defendant had 60 days from the June 2017 order to appeal the denial of his Section 2255 motion. He didn't do that. So it's the government's position that that resolves this case. There's lack of jurisdiction. He chose that certificate of appealability as to the basis for this court's jurisdiction. It's not here. And he doesn't really challenge that. Instead, he switches courses in his reply brief and says, no, no, I'm not appealing that order, even though that's all he talked about here today. Instead, I'm appealing the denial of the Rule 60 motion. But an appeal of a motion to reconsider doesn't bring up the merits of the underlying order. The district court said it was a proper Rule 60b motion. The district court did. And then it made the statements that have emphasized by opposing counsel this morning about Sunbear and so forth. The relief of it being unavailable. So that's preserved. The Rule 60 motion is preserved. So whether or not the district court abused its discretion in denying that Rule 60b motion. It's always an abuse of discretion to make an erroneous conclusion of law. That's Hornbook, at least, Eighth Circuit law. True. But let's look at the basis for this. That was an erroneous assertion of law. So it seems to me that's what, I agree, he can't go back. And well, I'm not sure there's any difference between the two. I don't think there is, Your Honor. First of all, even if the district court would have been without authority to reverse under these circumstances. And here's why. And here's why it's not an abuse of discretion. The defendant raised three bases in the motion to reconsider. First, the district court's failure to grant a certificate of appealability. Well, the district court gave him that certificate. It functions as legal nullity. But he can't appeal that because he got it. Second, he argued that the district court committed error because it should have invalidated the ACCA sentence. It should have amended the judgment to reflect a new sentence. He could have raised that earlier. And it's not an abuse of discretion to deny a Rule 60b motion where an argument could have been raised earlier. He had plenty of time to raise that. And third, he argued that he was entitled to resentencing under the so-called sentencing package cases. But it's not an abuse of discretion to deny a Rule 60 motion where a litigant is simply attempting to revisit, relitigate issues previously. You're saying that he could have made the Sunbear argument earlier and didn't? Or some other argument? He could have argued to the district court at any time during that appeal period. Judge, you recognize that I'm not an armed career criminal. You need to amend the judgment on count one, the firearm count. Oh, OK, but that's not the issue that's being argued this morning. Correct, Your Honor. But I want you to address the one that's being argued this morning. Absolutely. In reviewing a timely appeal of a 60b denial, why can't we review an assertion that the denial was based on an error of law, and therefore was an abuse of discretion? Here's why, Your Honor. First of all, he already argued that previously, both in the pro se motion under 2255, as well as in the pro se motion to reconsider that was filed in June of 2017. So when he files this motion in February 2018, he's simply relitigating the issues previously raised. And it's not an abuse of discretion. Every time a district court said, well, you say I made an error of law, but I didn't. It's the same argument I rejected before. So therefore, I deny the 60b. And there's automatically no abuse of discretion. Correct. Even if the error was made both the first and the second time. Correct, because the defendant's remedy ordinarily would lie in appeal to this court. You don't keep going back to the district court to try to get a different answer. I agree with you that that's the normal way things work out. But I don't think it's a categorical rule that we can't review a legal error in denying a Rule 60b motion just because the error was I already made that decision, and I'm sticking to it. Well, what would the remedy be here? The order denying the 2255 was already final. Well, their argument really is different. Their argument is that in the Rule 60b motion, even though there was a reference made to the sentencing package doctrine, that Mike Davis never said anything about the sentencing package doctrine. That instead he said, arguably erroneously, that he was bound by existing Eighth Circuit precedent, go away. When he could very easily have just said, hey, sentencing package doctrine, I love it. It gives me the greatest discretion over. I agree. You lose. 180 months, I mean, he doesn't really need to give you a hearing. You just need to say, yeah, I got it. My sentence would be the same. I'm done. I've written a number of such orders in my career. I don't think the district court said I'm bound by Eighth Circuit precedent, therefore cannot grant you relief. He simply did deny relief. But I have another reason the district court didn't use its discretion here. The district court could have taken at least three different avenues in addressing this 2255 motion. He could have done nothing, as he did, and that's countenance by cases such as Eason, which did not mandate a correction of an illegal sentence. He could have applied the sentencing package doctrine cases and given the defendant a full resentencing. Or he could have taken the path that this court approved of and right, where the district court corrected the illegal sentence but didn't have a comprehensive resentencing hearing. So there were three actions the district court could have taken, each of which was within its discretion. So when it denies the Rule 60B motion, the defendant can't show an abuse of discretion when three possible avenues were available to the district court, and it happened to choose one of those three. Denied it for the wrong reason. Well, unless he gives a reason that's legal error. I understand, Your Honor. Well, we are many, many cases categorizing different ways that there can be an abuse of discretion. Always start out with number one, an error of law. True, Your Honor, but as I'm trying to explain, there were three available avenues to the district court. So the district court can't abuse its discretion by choosing one of the three. And in this course, he chose the concurrent sentence doctrine path, which was within its discretion where the defendant is serving a concurrent sentence that's equal in length. And Sun Bear does apply here. Yes, that Sun Bear was a guidelines case that held that ordinary guidelines errors are not cognizable. But what it recognized is that relief under 2255 is severely limited. And it's only available when the defendant can show an illegal or unlawful sentence or miscarriage of justice. What about Cravens? That distinguished Sun Bear and Olten in a very similar situation as this. It's not a similar situation because in Cravens, the illegal sentence was actually longer than the concurrent sentence. The concurrent sentence in Cravens was 120 months, and the illegal ACCA sentence was 216 months. So the defendant could show a right to be released under those circumstances, didn't have to speculate. Once the ACCA sentence was gone, the sentence that remained in place was only 120 months. The same can't be said here. Once the ACCA sentence is gone, there's still a lawful 180-month sentence in place. The question isn't what the district court would have done. Certainly, the test for relief, the test for overcoming that presumption of finality isn't what was the district court thinking. The test 2255 is judged on a claim-by-claim basis. Just because the defendant can attack his ACCA sentence doesn't mean he automatically gets a resentencing hearing. Is there a miscarriage of justice in leaving in place a sentence that is wholly lawful? And in here, at all times, the district court could have sentenced the defendant on the drug trafficking count between 0 and 20 years. It chose 180. Whether or not it was cabined, its discretion was cabined as to the ACCA count doesn't affect the finality or the legality of the drug trafficking count. But the ACCA count is still in place, correct? It is. And that's an unlawful sentence. And that's an unlawful sentence. But under EASIN, it doesn't necessarily have to be corrected. I understand. What about the term of supervised release? Do we have an unlawful term of supervised release? We do, Your Honor. But it's in place on the drug trafficking count. It was never appealed. So even if the ACCA sentence were vacated, there's still a five-year term of supervised release, albeit it's beyond the statutory maximum, but it's never been challenged. So on the judgment, there's still a five-year supervised release term on the drug trafficking count. Can I ask a procedural question? Because I think it's, so I understand the background. It's relevant to your argument about the time lapse between the 2255 ruling and the Rule 60. Mr. Raymond was proceeding pro se, correct? Correct. And then the federal defenders were appointed to represent him? Correct. And do you know why? And maybe I'm asking the wrong person. I'm just curious as to why counsel was allowed to come in or why the court appointed counsel so late in the game and not earlier. During the flurry of filings following Johnson, both the Public Defender's Office as well as my office were reviewing defendants who had potential eligibility. It's my understanding that the Public Defender's Office encountered Mr. Raymond after the process. He had personally filed the Johnson motion. And I will say that the Johnson motion that Mr. Raymond filed pro se was remarkably cogent and did make all the same arguments that the defendant made in his counsel motion to reconsider as to why he was entitled to resentencing. He didn't cite the case law. There wasn't a lot of meat on the bones. But the United States certainly understood, and the district court certainly understood what the defendant was arguing. Thank you. Unless your honors have any questions, we ask that this court dismiss for lack of jurisdiction. To the extent there is jurisdiction over the Rule 60, we ask that the court affirm the district court's judgment because there was no abuse of discretion. Thank you. Thank you. I'll give you a couple minutes for rebuttal if you'd like. Mr. Meyers. I appreciate the latitude. OK. First, I disagree completely with the government's characterization of the divisibility of the Minnesota burglary with respect to the crime that's committed. In United States versus McPhee, which is a terroristic threat statute, it has an element of crime and violence. Crime and violence is defined elsewhere. This court held that because it's just a term that is not an element of the offense, it's rather a factual means. Moreover, this court held in MacArthur that those two different alternatives themselves were factual means. That was based on a Minnesota Court of Appeals case where the defendant requested a unanimity instruction, arguing that they were two alternative elements. He was denied. I can't remember the name of the case off the top of my head. So I think that's completely incorrect. I don't think that's the law at all. With respect to Cravens, the government And that's distinguishable from my case. That's not true at all. In Olten, the district court said, you can still get 235 by taking a 120 and a 115 and making them consecutive. In fact, Cravens discussed that case in Distinguished Olten. So it's not the case that he had an ineluctable, undisputable right to be released. If you do the Olten stacking, he doesn't. I think Cravens is totally on point. I think that the Wright case is distinguishable because there the district court recognized that it could have imposed a lower sentence and chose not to. That gets to the nub of the error in the district court's reasoning. The district court said, I can't do that. I could have imposed the same sentence, so you lose. So that is completely distinguishable. And there is absolutely jurisdiction to review that error. That quote that I had from the district court opinion, that's from the denial of the 60B. The denial of the 60B order was in the addendum. So to claim that I never was challenging the denial of the 60B, I think, runs contrary to the record in this case, unless there are any questions. Very good. Thank you. Thank you, counsel. Case is complicated, as these seem to be so often. And it's been very well-briefed and argued. We'll take it under the light.